EDWARD P. McCARTY, ADM'R DE BONIS NON OF NANCY HOGG, DECEASED, Respondent, *vs.* ELIJAH S. FRAZER, *et al.*, Appellants.

1. *Executor—Indebtedness to testator not treated as cash on hand.*—Under the statutes relating to that subject (See Wagn. Stat., p. 87, ¿ 32 ; p. 110, ¿ 18, and compare with id. p. 84, ¿¿ 2, 3), where the executor is indebted to the estate, his debts are not to be treated as so much money, actually on hand, but are to be placed on the same footing with debts due the estate from other sources.

2. *Executors—Action against sureties of, by motion under statute—Proof as to solvency—Order of distribution.*—In proceedings by an administrator *de bonis non* with the will annexed against sureties of the executor, by motion under ¿ 67 of the administration law, (Wagn. Stat., p. 81) held, that evidence, at the time of the revocation of his letters showing the insolvency of the executor, was competent. And held, that in such proceedings proof of an order of distribution made by the probate court prior to their institution, directing the executor to pay a certain sum to legatees, was *res inter alios acta* and improper.

*Appeal from St. Louis Circuit Court.*

*N. Meyers & J. P. Vastine, with S. Reber,* for Appellants, cited Piper's Estate. 15 Penn. St. R., 536 ; Scott & Rule vs. Governor of Mo., 1 Mo., 493 ; 2 Bl. Comm., 512 ; Garber vs. Commonwealth, 7 Barr, 265 ; 2 Will. Ex., 1123, (3rd Am. ed.,) 1128 ; Miller vs. Donaldson, 1 Salk., 306.

*C. G. Drummond,* for Respondent, cited, Wagn. Stat., 1872, § 54, p. 90 ; Wagn. Stat., 1872, § 61, p. 91 ; Redf. on Wills, Vol. 2, p. 191, § 12 ; Will. on Exrs., Vol. 2, marg. p. 128–9 ; Mason vs. Stone, 2 Cow., 807, 808 ; Wankford vs. Wankford, 1 Salk., 306 ; Stevens vs. Gaylord, 11 Mass., 266 ; Winship vs. Bass, 12 Mass., 207–210 ; Eaton vs. Walsh, 42 Mo., 275 ; Harmer vs. Steele, 4 Exch., 1.

SHERWOOD, Judge, delivered the opinion of the court.

Nancy Hogg died in 1867, leaving a will, in which she appointed as her sole executor James Hall, who duly qualified in that capacity, giving as his sureties the defendants, Frazer and Hodgen. Hall made one annual settlement. The bulk of the estate consisted, as shown by the inventory and the settlement made, of indebtedness due from the exec-

utor to the testatrix. In 1870 Hall left the State, and his letters being revoked, McCarty became administrator *de bonis non* with· the will annexed, and therefore instituted the present proceedings under the provisions of section 67, p. 81, Wagn. Stat., against the defendants by motion. This procedure was successful, alike in the probate and circuit courts. Our statute (Wagn. Stat., §32, p. 87), changing the rule which prevailed at common law, has provided ; "If any person appoint his debtor executor of his will, such appointment shall not discharge the debt, but it shall be assets in his hands ;" and it has been strenuously insisted here that because of this provision ' the·amounts due by such debtor, executor, * * * * must be considered and treated as so much cash or money actually on hand,' or else that the concluding words of the section referred to in relation to assets will be meaningless." We are unable to take this view of the matter. That portion of the section in question is in perfect conformity with Wagn. Stat., section 2, p. 84, requiring the executor to make an inventory embracing, among other things, "the debts due to or to become due to the deceased, the names of debtors ;" and in keeping also with the section next thereafter, commanding an affidavit to be made in verification of the inventory, and specifically stating that the executor was " not indebted, or bound in any contract to the deceased, at the time of his death, except as stated in the inventory." The manifest object of these statutory provisions is to reduce to the same plane all debts due the estate, whether owing by the executor or any other debtor. For this reason, doubtless, the debts of the executor are called assets, and in order to preserve a lasting memorial thereof they are required to be inventoried just in precisely the same manner as, and simultaneously with, debts due from other sources. This obvious parallelism between the debt of the executor and of third persons is of easy observance in other portions of the statute. Thus it is elsewhere provided, (Wagn. Stat., § 18, p. 110,) that " at his final settlement the court shall give credit to the executor * * * for all the

debts which have been charged in the inventory as due to the estate, if the court be satisfied that * * * * the debtor was insolvent." That the debt of the executor is one of those "charged in the inventory" sections 2 and 3 *supra* demonstrate ; that no distinction is made as to any debts the inventory contains is equally demonstrated by the sections just cited in relation to ·final settlements. The expression " all the debts," as contained in that section, is evidently the indi-. cator of a legal integer, having for its component parts the aggregated indebtedness "charged in the inventory as due to the estate." To hold otherwise would be to say, in contravention of a well-known maxim, that a part was equal to the whole, or that the whole was less than the sum of all its parts. Various instances have been called to our attention as showing that the term "assets," when·used in other portions of the law, respecting the administration of estates, is synonymous with the word money ; as for example, that the proceeds of the sale of property bound by an execution or attachment shall be applied to the payment of such execution or attachment, and the residue, if any, shall be "assets" to be administered according to law (Wagn. Stat., section 61, p. 91,) ; and the evident inference intended to be drawn from this is that, as money is assets within the meaning of one section, therefore assets means money within the meaning of another. There is no warrant for such conclusion. Even had the legislature, in express terms, provided that debts due to the testator by the executor should be money in his hands, the deduction desired by plaintiff's counsel would not follow, whereby worthless assets are transmitted into cash, unless, indeed, the creative faculty can be accorded to our law-makers or the touch of Midas to their enactments.

The construction here given to the statute under consideration, as enunciated in the foregoing observations, is uniform with the construction which it is believed it has received in probate practice from the passage of the original act of 1825 down to the present time. Any other construction than this would make the sureties of an executor not only guarantors

of his official integrity and competency, but guarantors also, so far as concerns the estate on which he administers, of his individual solvency, thus positively enriching an estate in direct proportion to the debts due to it by an insolvent executor. The statute never intended and cannot be tortured into any such result; never intended either that the liabilities of the sureties should be increased, or that the creditors or distributees should be placed in better pecuniary plight in consequence of an insolvent executor administering. The risks attendant on suretyship in connection with official bonds are already sufficiently great without environing it with new perils, or confronting those who reluctantly assent to its responsibilities with hitherto unsuspected dangers. But we are referred to the case of Eaton, the administrator, etc. vs. Walsh, 42 Mo. 272, as establishing the correctness of the position assumed by plaintiff's counsel in regard to the topic under discussion. A careful examination of that case, however, will conclusively show that the position taken finds no support there, and for the obvious reason that that opinion of the court is based on the facts ascertained by the judgment rendered, viz; "that the administrator had the amount of money in his hands for which the judgment went," and the opinion states, that no instructions were asked or given, and no question of law raised at the trial, and, therefore, that every presumption should attend the judgment.

In respect to the order of distribution, we do not conceive it to have been admissible, on the ground that whatever may be its effect and validity as between the distributees and the sureties in case of suit brought against the latter by the former, on which point it is not necessary to pass the order, so far as concerns the present procedure, must be regarded as *res inter alios*, and improperly admitted. The conclusion, at which we have arrived from the premises, is that the evidence offered to show the insolvency of the executor was competent, and owing to its rejection, and the admission of the order of distribution, the judgment should be reversed, and the cause remanded.

Judge Vories absent ; the other judges concur.