FIRST NATIONAL BANK OF CLINTON, *Appellant*, v. BRENNEISEN.

1. **Practice, Civil:** ATTACHMENT. Where the proceeds of attached property, in the hands of a receiver appointed by the court, is claimed by different attaching creditors, it is proper for the court upon their motion, to fix their priorities and distribute the fund accordingly.

2. **Partnership:** LIEN: CREDITORS. The attachment of partnership property by a partnership creditor gives a lien superior to that created by the prior attachment of the same property by an individual creditor of one of the partners.

3. ——— : ——— : ———. The evidence in this case examined and *held* that the attached goods were partnership property and as such subject to the payment of the firm debts in preference to an individual debt of one of the partners.

*Appeal from Henry Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED.

*W. S. Shirk* and *R. E. Lewis* for appellant.

(1) Section 447, Revised Statutes, 1879, did not authorize the circuit court to fix the rights and priorities of the different attaching creditors of Brenneisen, and of the partnership firm of Brenneisen & Goff. The defendants were not the same. Yet the court below undertook to enlarge its powers under said section and settle the conflicting rights of different creditors against different defendants, viz., Brenneisen individually, and the firm of Brenneisen & Goff. This it could not do. *Swallow v. Duncan*, 18 Mo. App. 623. (2) The firm of Brenneisen & Goff had been dissolved for about ten days when appellant's attachment was levied. Brenneisen retained his old stock in the Clinton store. It was his individual property at the time the appellant's attachment was levied. Story on Part. secs. 358, 359 ; *City v. Wiley*, 35 Iowa, 330 ; *Giddings v. Palmer*, 107 Mass. 269 ; Parsons on Part. 346, note *g*. (3) But even if the property attached might be called partnership property, the court in this proceeding had no authority to apply the doctrine that firm property must first be applied to firm debts. That doctrine is only a principle of administration, adopted by courts where from any cause they are called upon to wind up the firm business. A firm creditor as such has no prior lien on the partnership assets. *State v. Thomas*, 7 M. A. 205 ; *Schmidlapp v. Currie*, 55 Miss. 597 ; *Level v. Farris*, 24 Mo. App. 445 ; *Schackelford v. Clark*, 78 Mo. 491 ;

*Sparham v. Hubbal,* 10 Metc. 309. (4) Appellant attached substantially the same goods which furnished the basis of Brenneisen's credit with the bank. As a matter of naked right as well as law, it was entitled to satisfaction of its debt out of the proceeds of these goods. *State ex rel. v. Thomas,* 7 Mo. App. 205.

*A. Haynie* and *S. E. Price* for attaching creditors of respondent.

(1) Section 447, Revised Statutes, 1879, authorized the circuit court to fix the priorities of the different attaching creditors of the firm and the individual members of the firm. Said section gives the court an equitable jurisdiction to settle and determine all controversies which may arise between any of the plaintiffs in relation to the property and the priority, validity, good faith, force and effect of the different attachments. Said section, however, applies only to several proceedings in attachment, and such was the holding of the court in the case of *Swallow v. Duncan,* 18 Mo. App. 623. (2) The fact of dissolution, the firm being insolvent, and a partition of the stock among the several members of the firm, can give neither partner any interest in the part taken by him until the firm creditors are paid. The right of the firm creditors to be paid out of the firm assets, in preference to the individual creditors, is not impaired by a dissolution, and as against them the partition is a nullity. *Phelps v. McNeely,* 66 Mo. 554 ; *Julian v. Rightsman,* 73 Mo. 569 ; *Shackelford's Adm'r v. Clark,* 78 Mo. 491 ; Parsons on Part. 346, note *g,* 502, note *l* ; Story on Part. 97, 327, 360 ; *Tenney v. Johnson,* 43 N. H. 144 ; *Flannigan v. Alexander,* 50 Mo. 50 ; *Ackley v. Staehlin,* 56 Mo. 561 ; *State ex rel. v. Spencer,* 64 Mo. 355. (3) The attachment by a separate creditor of a portion of his debtor's interest in the partnership, or of the goods themselves, is vacated by the

insolvency of the partnership, which leaves in the partner no interest, and requires all the property to pay the partnership debts. Parsons on Part. 360, 361.

BRACE, J.—This is a controversy between the plaintiff, who is an individual creditor of C. H. Brenneisen, who is named the respondent, and certain creditors of Brenneisen & Goff, a firm of which the said C. H. was a member.

The plaintiff, on the fifth of February, 1885, in an action commenced by him in the circuit court of Henry county against C. H. Brenneisen, sued out a writ of attachment and caused the same on that day to be levied on a stock of goods then in possession of said Brenneisen, in McBeth's building, in the city of Clinton, in said county. Subsequently, a number of the creditors of Brenneisen & Goff, some on the same day, some on the next, and some several days thereafter, in actions commenced in the same court, severally sued out writs of attachment and caused them to be levied upon the same goods, as the property of said firm. Afterward, on the petition of the plaintiff and the other attaching creditors, a receiver was appointed, the goods sold, the proceeds received and held by the receiver subject to the order of the court. In the meantime, all the attaching creditors obtained final judgment in their several actions, whereupon the plaintiff filed its motion in said court praying for an order directing the receiver to pay plaintiff out of the proceeds of the sale of said attached property the amount of his judgment, interest and costs as a prior attaching creditor, and at the same time, the attaching creditors of the partnership firm of Brenneisen & Goff filed their motion, claiming that the property seized and sold was the property of said firm and subject to the payment of the partnership debts, to the exclusion of the individual debts of the members of the firm, and praying for an order restraining the receiver

from paying out of said proceeds any of the judgments of the individual creditors of the partners until the judgments of the several creditors of the firm of Brenneisen & Goff are fully paid. These motions were submitted and heard at the same time; the motion of the bank was overruled, and the motion of the attaching partnership creditors sustained; the court then proceeded to fix the priorities of the several attaching creditors in the fund in the hands of the receiver, postponing the judgment of the plaintiff to those of the firm creditors, and ordering distribution accordingly. From this action of the court, the plaintiff appeals.

The evidence tended to show that prior to February, 1884, Brenneisen & Goff were doing business in partnership; that about that time they dissolved, Goff selling out to Brenneisen; that thereafter, until the following December, they each conducted business on their own individual account; that in July, 1884, Brenneisen contracted the debt to plaintiff for which it sued out its attachment and for which it obtained judgment for $2,621.10; that at the time this debt was contracted, Brenneisen's stock of goods was of the value of about $8,000; that in December, 1884, Brenneisen and Goff again went into partnership under the firm name of Brenneisen & Goff, each putting into the concern his stock of goods; the value of Goff's stock put in does not appear. The goods were intermingled and they commenced doing business together under the firm name, and during the following month, purchased largely new goods for which they contracted the debts due to the attaching creditors of the firm, and for which their several judgments were obtained. About the tenth of January, 1885, they started a branch store at Brownington, to which the stock that Goff put in was transferred. The new goods bought were some retained at the Clinton store, in the McBeth building, some sent to

the Brownington branch, and some sold in bulk at a sacrifice without going into either store. The concern was insolvent when the attachments were levied. The proceeds in the hands of the receiver from the sale of the goods in the Clinton store amounted to $4,546.

The power of the circuit court, on the motion of the plaintiff, and all the other attaching creditors, both individual and partnership, of Brenneisen & Goff, to fix the priorities and distribute the fund *in custodia legis*, arising from the sale, at the instance of all the parties, of the same property upon which they had all caused their attachments to be levied, in the hands of the receiver of the court appointed upon their application for that purpose, is, we think, too plain for argument. R. S. 1879, secs. 427, 430, 439.

There can be no question that the goods in the McBeth building in Clinton, upon which the attachments were levied, were at the time the partnership property of the firm of Brenneisen & Goff. Some of them were the old goods of Brenneisen which he had transferred to the firm when the last partnership was formed, the rest goods that had been purchased by the firm afterwards, but if they had consisted exclusively of goods of the old stock, the plaintiff would have been in no better situation. It had no lien on that stock, the title to it passed to the firm, when the partnership was formed, and it became a part of the capital stock of the firm, and there is no evidence that afterwards Brenneisen became the owner of it in any way as his individual property. It is true that one witness, who had been clerking for the firm, testifies that about ten days before the attachments were levied, the partnership was dissolved, but he seems to have been the only person in the world that ever knew it, the partners never spoke of it, nor was any notice of such dissolution ever given. The goods purchased by the firm continued to be received, and mingled with the

partnership stock, and made away with as before, up to the time the store was closed by the levy of the attachments. And not a tittle of evidence that Brenneisen, even by the terms of the dissolution, if there was one, was to have the goods in the Clinton store as his portion of the partnership stock. At best, it was a mere naked dissolution of an insolvent partnership, in the effects of which the individual partners had only an interest subject to the right of each partner to have the partnership assets applied to the payment of the partnership debts. The partnership creditors, by the levy of their attachments on the partnership goods, acquired the right to have this equity of each of the partners enforced, and the proceeds of the sale of the partnership goods applied to the payment of the judgments for their partnership debts, before the plaintiff, under his judgment, could claim any of such proceeds by virtue of his prior attachment of the individual interest of one of the partners in the goods. The court so held, and in this there was no error. *Shackleford's Adm'r v. Clark*, 78 Mo. 491; *Julian v. Wrightsman*, 73 Mo. 569; *Phelps v. McNeely*, 66 Mo. 554; *State ex rel. v. Spencer*, 64 Mo. 355; *Wiles v. Maddox*, 26 Mo. 77; Story on Part., sec. 360; Parsons on Part. 359 *et seq.*

The judgment is affirmed. All concur.